# Court of Appeals
## Tenth Appellate District of Texas

---

10-24-00269-CR

---

Willietroy Black,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
443rd District Court of Ellis County, Texas
Senior Judge David Evans, presiding
Trial Court Cause No. 47837CR

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury found Appellant, Willietroy Black, guilty of the felony offense of indecency with a child by sexual contact. The jury assessed his punishment at confinement for five years. The trial court sentenced Black accordingly. This appeal ensued. We will affirm.

## A. Background

In 2018, J.B. stayed with her grandparents, Black and his wife, Debbie, in Waxahachie for three weeks while her parents were handling a move from Oklahoma to California. During this stay, J.B. stated that she was sitting on the armrest of Black's chair when he pulled her into his lap, reached under her sweater, and groped her breast "a few times." Debbie was not home, so J.B. stated she wrote Debbie a note saying that Black had touched her inappropriately. J.B. said that Debbie never said anything to her about the note, but that Debbie did come into J.B.'s room with J.B.'s parents on speaker phone. She said her parents asked if she wanted them to come pick her up and that Debbie shook her head no, so J.B. told her parents that she was okay. J.B.'s mother testified that Debbie told her that while Black and J.B. were playing, Black had "unintentionally grazed [J.B.'s] breast" and that it was just a misunderstanding. Later in her stay, J.B. said that while she was in the bathroom looking for her toothbrush, Black came into the bathroom and locked the door behind him. J.B. said he sat down, pulled her over to him, and stuck his fingers inside her vagina. She stated that she yelled for Debbie, but Debbie did not respond. J.B. testified that she thought Debbie had told her parents about the allegations she made and that her parents did not care, so she did

not discuss the incidents with her parents after she left her grandparents' house.

In 2021, J.B.'s parents noticed that her behavior had changed, especially around her grandparents. The family was considering moving back to Texas and planned to stay with Black and Debbie for some time. J.B.'s mother asked if she was excited about returning to Texas and seeing her grandparents. At this point, J.B. told her mother that during the 2018 visit, Black had "touched her boobs" and that he made a comment about her vagina that made her uncomfortable. J.B.'s parents confronted Black with the allegations and he did not deny the allegations, but just said "ah" in response. Later that year, J.B. asked her mother if she knew "what it meant to be fingered," and she said that Black had done that to her in the bathroom during the 2018 visit. J.B.'s parents reported the outcries, and an investigation followed. J.B. underwent a forensic interview and SANE exam.

At trial, D.H., Black's adult niece, testified that Black sexually abused her starting when she was about nine or ten years old. She testified to many incidents, including that he would often put his hand under her shirt and grab her breast. D.H. stated she did not report the incidents because Black had been telling other adults that D.H. was going to make claims that Black molested her if Black didn't give D.H. her way. D.H. testified that she never

said this but that, because of this, she thought no one would believe her if she made an outcry.

Black also testified at trial. He testified that in 2018, there was an argument between J.B. and her parents over her use of a tablet. He originally said the argument occurred in July 2018, but later said it happened right before J.B.'s 2018 visit, which was in October. Black said that during the argument, J.B.'s father threatened violence against J.B. and that he had seen bruises on J.B. before. Black claimed that after the argument, J.B. was angry with her parents and Debbie, but not with Black. Black described an incident during J.B.'s visit involving a water fight that he thought was playful, but ended with J.B. getting angry. He stated that after the water fight, Debbie told him that J.B. had claimed he touched her inappropriately. He stated that he and Debbie talked to J.B. and that he thought the issue was resolved. He also stated that he did not notice any difference in how J.B. acted around him after the 2018 visit.

## B. Issue One

In his first issue, Black argues that the trial court erred in allowing Emily Mason, the SANE nurse, to provide opinion testimony as to J.B.'s credibility.

## 1. Authority

Expert testimony is admissible if it assists "the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. However, expert testimony does not assist the jury if it constitutes "a direct opinion on the truthfulness" of a child victim's allegations. *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993) (testimony regarding an opinion of truthfulness does more than assist the trier of fact to understand the evidence or to determine a fact in issue; it decides an issue for the jury). An expert may testify that the witness exhibits symptoms consistent with sexual abuse, but not that a witness is truthful. *Cohn v. State*, 849 S.W.2d 817, 818–19 (Tex. Crim. App. 1993).

## 2. Analysis

At trial, Mason testified to the medical history J.B. provided during the SANE exam, including her mental health and physical health. Mason stated that J.B. reported a history of sadness, stomachaches, headaches, terrors, and self-harming behavior. Mason also stated that J.B. declined an anogenital exam. After describing J.B.'s history and Mason's observations of J.B. during the exam, Mason was asked whether her "findings were consistent with there being sexual abuse of [J.B.]." Black objected that this question was eliciting testimony of whether Mason found J.B. truthful, but the trial court overruled

the objection.  Mason then testified that her findings were consistent with J.B. having been sexually assaulted.  While an expert may not testify directly about a victim's truthfulness, they may testify that the witness exhibited symptoms consistent with sexual abuse.  *See Cohn*, 849 S.W.2d at 818.  Therefore, the trial court did not abuse its discretion in allowing Mason to give her opinion on whether her findings were consistent with J.B. having been sexually assaulted.

We overrule Black's first issue.

## C. Issue Two

In his second issue, Black argues that the trial court erred in applying Rule 412 to exclude evidence that J.B. was caught with sexual images and messages on her tablet.

### 1. Authority

We review a trial court's evidentiary rulings under an abuse-of-discretion standard.  *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).  We will not disturb such rulings unless they lay outside "the zone of reasonable disagreement."  *Id.*  (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

Generally, in prosecutions for certain sex cases, a party cannot admit either reputation or opinion evidence of a complainant's past sexual behavior; or specific instances of a complainant's past sexual behavior. TEX. R. EVID.

412(a). However, such evidence is admissible where it relates to the complainant's motive or bias or is constitutionally required to be admitted; and its probative value outweighs the danger of unfair prejudice. TEX. R. EVID. 412(b)(2)(C) and (E).

2. Analysis

Black states that while "the jury heard evidence that J.B. was texting strangers on [her] tablet and pretending to be 18, resulting in an argument between J.B. and her parents and [Black] having to take away the tablet," the jury should have also heard evidence that J.B. had also been using the tablet to take sexually suggestive photos and was shown pornography by an older friend who shared the tablet with J.B. Black argues that this evidence should have been excepted from the Rule 412 exclusion because the evidence would have "given the jury perspective as to J.B.'s motive to lie" and would have helped "flesh out the theory put forth through [a defense witness's] testimony that J.B. was unhappy with [Black] for providing discipline for the incident by taking away the tablet, thus providing bias against [Black]."

Assuming without deciding that the trial court erred in excluding the evidence, any error was harmless.

On appeal, Black argues that "the trial court committed constitutional error by excluding the evidence, thus impairing [his] substantial right to

confrontation." *See* TEX. R. APP. P. 44.2(a). At trial, Black did not argue that the evidence should have been admitted based on due process, the confrontation clause, or any other constitutional claims. The record shows that the trial court was only asked to rule on arguments made under the rules of evidence. Black's trial arguments did not articulate confrontation or due process as grounds for admission of the excluded evidence, and therefore he has failed to preserve these constitutional arguments for appeal. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *see also Merrick v. State*, 567 S.W.3d 359, 368 (Tex. App.—Fort Worth 2018, pet. ref'd).

Black also argues on appeal that the exclusion of the evidence was an abuse of the trial court's discretion under the applicable rules of evidence. The erroneous exclusion of a defendant's evidence generally constitutes non-constitutional error unless the excluded "evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). Here, Black's defense was that J.B. had a motive to lie about the allegations because she was upset about being disciplined. The record shows that Black was not precluded from presenting the substance of this defense to the jury. *See id.* at 666. Accordingly, we will determine whether the erroneous exclusion of the evidence requires reversal using the harm analysis set out in Rule of Evidence

103(a) and Rule of Appellate Procedure 44.2(b). *See* TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b); *Potier*, 68 S.W.3d at 666. Under Rule 44.2(b), an appellate court must disregard an error when no substantial rights of the defendant are affected because the error did not influence the jury, or had but a slight effect. *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

Here, Black states that admission of the excluded evidence would have given the jury perspective as to J.B.'s motive to lie, "as she could pivot in her neglectful parents' eyes from being a precocious child misbehaving to a child acting out after being a victim of sexual abuse." However, Black was able to develop his defensive theory through multiple witnesses' testimony about J.B. being disciplined for her inappropriate use of the tablet and for lying about her age online. The jury also heard testimony about arguments between J.B. and her parents before the outcry occurred. While the excluded evidence could have provided more details about J.B.'s behavior that led to the arguments with her parents and the discipline over the tablet use, the admitted testimony was sufficient to develop Black's theory about J.B.'s motive to lie.

Black also states that the excluded evidence would have helped flesh out the theory put forth through testimony that J.B. was unhappy with Black for disciplining her for the incident by taking away the tablet, thus providing a bias against him. However, this claim does not accurately reflect the evidence.

The record shows that it was J.B.'s mother, not Black, who disciplined J.B. by taking her tablet away. In his own testimony, Black stated that he was not involved in the argument between J.B. and her parents and that J.B.'s behavior towards him never changed. He stated that while J.B. was "bitter and sad" after the fight, it was not aimed at him.

In light of the foregoing evidence, we cannot say that Black's substantial rights were affected by the exclusion of the evidence. The record does not support the claim that J.B. was unhappy with Black or that he was even the one to discipline her. Therefore, the exclusion of the evidence likely had no more than a slight effect, if any, upon the verdict. *See Thomas v. State*, 137 S.W.3d 792, 796 (Tex. App.—Waco 2004, no pet.). Additionally, Black was not prevented from presenting the substance of his defense to the jury. *See Davis v. State*, 104 S.W.3d 177, 182–83 (Tex. App.—Waco 2003, no pet.).

We overrule his second issue.

### D. Issue Three

In his third issue, Black argues that the trial court erred in denying his motion for new trial without a hearing.

1. Authority

The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal.

*Smith v. State*, 286 S.W.3d 333, 339–40 (Tex. Crim. App. 2009). Such a hearing is not an absolute right. *Id.* A trial court abuses its discretion in failing to hold a hearing if the motion and accompanying affidavits raise matters which are not determinable from the record and establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* A motion for new trial must be supported by an affidavit specifically setting out the factual basis for the claim. *Id.* If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the basis for the relief claimed, no hearing is required. *Id.* Additionally, a defendant must give the trial court notice that he timely filed a motion for new trial and desires a hearing on the motion. *See Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005).

2. Analysis

In his motion for new trial, Black requested that the trial court "grant him a new trial herein" because (1) the verdict is contrary to the law and evidence, (2) evidence of the victim's prior sexual behavior was improperly excluded under Rule 412, and (3) the verdict was a product of jury misconduct. In support of his third reason, Black included two affidavits, one from his trial attorney and another from a juror. The order on the motion for new trial included an option for the trial court to grant or deny the motion or set a hearing on the matter. The record does not show that Black requested a

hearing on his motion for new trial. The motion does not contain a request for a hearing, and while the order included an option of having a hearing or ruling on the motion without a hearing, which, "without a more specific request, left to the trial court's discretion whether a hearing should be held." *See id.* at 231. Since Black did not adequately advise the trial court of his desire for a hearing, he has not preserved his argument that the trial court erred in failing to hold a hearing. *Id.*

Therefore, we overrule his third issue.

E. Conclusion

Having overruled Black's three issues, we affirm the judgment of the trial court.

—————————————————————
MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: June 18, 2026

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
Do Not Publish
CR25

